MACK TRUCKS, INC., Appellant,

v.

J. B. HARDIN, Appellee.

No. 3970.

Court of Civil Appeals of Texas.

Waco.

March 15, 1962.

Rehearing Denied April 4, 1962.

Ivan Irwin, Sr., Dallas, for appellant.
Glenn Stewart, Corsicana, for appellee.

TIREY, Justice.

Appellant has perfected its appeal from an order overruling its plea of privilege to be sued in Dallas County, the county of its residence. Appellant is a foreign corporation, having its place of business in Dallas County, Texas, but does not maintain an office or agency in Navarro County, Texas. The case was tried without the aid of a jury, and there was no request for findings of fact and conclusions of law, and none filed.

The order is assailed on 5 points. Points 1, 2 and 3 are to the effect that the court erred in overruling the plea of privilege (a) because there is no evidence to sustain venue within Exception 7 of Art. 1995, Vernon's Ann.Tex.St.; (b) that the evidence was insufficient to sustain venue; (c) because the overwhelming weight of the evidence established that there was no fraud committed in Navarro County, Texas; (d) because there is no basis on which to overrule its plea of privilege because of the provisions of Exception 27 of Art. 1995, because said exception is unconstitutional as applied to appellant; (e) because the appellee failed to prove that he believed or relied upon the alleged misrepresentations made in Navarro County to induce him to sign the contract.

Plaintiff went to trial on his original petition, and pertinent to this discussion, alleged substantially that on or about the 27th day of January 1960, he and defendant entered into a contract of sale in Corsicana, Navarro County, Texas, pursuant to which plaintiff purchased a used 1956 Mack truck, (giving numbers, etc.) at the price of $9,000.00; that as a part payment for such purchase price, defendant allowed plaintiff $1750.00 as its reasonable cash market value for the plaintiff's White truck which defendant received and applied to its own use, leaving a balance of $7,250.00; that they negotiated several days before the sale was consummated on January 27, 1960 at Corsicana, Navarro County, and that prior to such negotiations and during such negotiations, de-

fendant knew that plaintiff was in the long-haul trucking business and that said truck unit purchased by plaintiff would be put to that use and would be expected to be in good workable condition; that during such negotiations, defendant, through its agents and representatives, (Charles Blair and Mr. Bailey, District Manager) represented to plaintiff that the truck was a used 1956 model; that it was in good workable condition, and that it was in a state of good repair, and that plaintiff could expect at least one full year of normal operation in its business; that said representation was made for the purpose of inducing plaintiff to enter into an agreement to purchase the truck; that plaintiff relied on such representations and entered into the agreement to purchase, and would not have made such purchase but for such representations; that such representations were false and deceitful, and were maliciously and fraudulently made by the agents of defendant to induce plaintiff to purchase the truck; that defendant agreed to deliver to the plaintiff such used 1956 Mack truck-trailer and usual equipment, which defendant represented was in good workable condition, and was in such fit condition to fully perform the service to which it would be placed by plaintiff; that the truck so delivered to plaintiff was not a 1956 Mack truck as represented, but was a truck made up with parts from both a 1954 and 1956 model Mack truck; that it contained twin screw tandems or 2 rear tandems; that plaintiff had no knowledge or information that the truck was so constructed, and he would not have consummated such sale if such fact had been known to him; that the 1954 model twin tandem rear ends installed in this truck did not function properly, necessitating a repair to such rear ends within 15 days from the date of delivery; that defendant, acting through its agents and employees, wilfully, maliciously and fraudulently represented to plaintiff that said truck was in good state of repair, of good mechanical quality, and capable of performing service for which it was to be used by plaintiff, when in fact defendant knew, or should have known by prudent and ordinary conduct, that said truck was in poor mechanical condition, and that said truck could not reasonably be expected to perform the use to which plaintiff would place the truck; that defendant ratified and adopted the acts of the agents as its own.

Plaintiff seasonably controverted defendant's plea of privilege and alleged that it had venue under Subdivisions 7 and 27 of Art. 1995 aforesaid.

It is true that the plaintiff testified to the effect that he executed the purchase order and contract in Dallas, Texas on the 27th of January, 1960, (appellant's Exhibit No. 1); that he executed the chattel mortgage in Dallas, Texas (defendant's Exhibit No. 2); and the delivery receipt January 27, 1960 in Dallas, Texas (defendant's Exhibit No. 3).

Pertinent to the trade, Mr. Hardin testified in part:

"Q. As a matter of fact, Mr. Hardin, you didn't agree to buy the truck at that time when Mr. Blair was here in Corsicana, did you?

"A. Not that particular time.

"Q. And what you did do was to make arrangements to go to Dallas and check the truck out yourself?

"A. I never did check out the truck.

"Q. Did you go to Dallas before January 27th to look at the truck?

"A. Yes sir.

"Q. All right. That is, Mr. Hardin, you made another trip to Dallas after you had sent your driver to check it out? At that time you went with the driver, or you and the driver went together, and he took the trade-in truck?

"A. Yes sir.

"Q. And it was then, in Dallas, that you and Mr. Blair got together on the price and sale of this truck, was it not?

"A. No sir. We got together previously to that, here. Mr. Evans can tell you. Mr. Evans,—he had left orders there with Mr. Evans what to do.

"Q. * * * There was still an open item on the amount of trade-in to be allowed for your truck, wasn't there?

"A. There wasn't to me. They acted like there was when we got up there, but when we got hold of Mr. Blair,—* * * they verified what I had said.

"Q. There had been, until the last trip, the difference, or apparent difference, between you and the Mack people as to the difference of the terms of the trade-in on your truck, and they had to get hold of somebody to straighten it out?

"A. The trade was made here, and when I went up there to get the truck * * *

"Q. I thought you said, Mr. Hardin, that you signed the contract * * *

"A. I did * * *

"Q. * * * and the papers in Dallas?

"A. That's the way they seemed to do business,—to have a man come in up there and have the guy to look for the man that sold the truck and to finally verify that he did sell the truck, what he sold it for, and things like that, but I bought the truck from Mr. Charlie Blair right down here at Mr. J. T. Arnett's.

"Q. Did you pay him in cash at that time?

"A. No, sir. He looked at my trade-in; I had it brought down there, —I had one of the men to bring it down there and he looked at it and accepted it and I left it there until I carried it to Dallas to him.

"Q. Mr. Hardin, you said at that time when you and Mr. Blair got together on the figures and you showed him the trade-in?

"A. That's right.

\* \* \* \* \*

"Q. You knew at the time Mr. Blair was here that you were going to go into Dallas to look at the truck before you finished the purchase of it?

"A. I had already went and looked at it and accepted the truck and accepted the trade with him. He came here to Corsicana previously, I believe two times, and looked at my trade-in, and then he came back here and we made the deal and accepted the deal and he told me to get on up there, that he would have Mr. Evans to fix these papers up, and the papers on the truck, and when I got there we didn't have any papers on the truck—they didn't have them."

The plaintiff testified to the conversation he had with a Mr. Nylon, a representative of the defendant:

"Q. * * * Did Mr. Nylon ever make a statement to you about,—touching on the condition of this truck before, or after, the sale?

"A. Yes, sir, after the sale,—that's the day I was up there. Well, he said that,—told me about the rear ends, and I asked him, 'Did you all fix them after you found out about them?' And he said, 'I would guess that those rear ends have a million miles on them', and I said, 'Well, what would you say we ought to do about it',—or 'what the cost would be', and he estimated that it would take around Twenty-five Hundred Dollars to go through the rear ends and put them up in shape.

"Q. Now, before the sale and at the time Mr. Blair was in Navarro County to talk to you about it, as you have previously testified, did Mr. Blair make any statements to you concerning the condition of the rear end to this truck?

"A. Yes, sir, he said that the rear ends had been checked out and they had put two—they had put some new universal joints on it and it checked out all right."

Subdivision 7 of Art. 1995, V.A.T.S., provides:

"Fraud and defalcation.—In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

Is the evidence sufficient to sustain the trial court's implied finding to the effect that the appellant, acting through its agents, fraudulently represented the condition of the truck to the plaintiff in Navarro County, Texas for the purpose of inducing plaintiff to make the trade? It is our view that the record is ample to sustain such implied finding. Here, we have an undisputed factual situation where the plaintiff gave a truck in trade of the value of $1750.00. This trade-in was credited on the purchase price of $9,000.00 for the Mack truck under the testimony which we have recited. We think the trial court was authorized to find impliedly that plaintiff believed that defendant's agents represented to plaintiff that the Mack truck was in good repair, and that plaintiff believed and relied on such representations, and that such representations were false; and that the truck was not in good repair, as represented. Under the undisputed record, after the plaintiff had had the truck some 15 days, defendant's agent and representative estimated that it would take $2500.00 to repair the rear end

of the truck. We think the evidence is clear that fraud was committed on the plaintiff in Navarro County, and we accordingly affirm the judgment of the trial court. Points 1, 2, 3 and 5 are overruled. Point 4 passes out of the case.